UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOUTH BEND COMMUNITY SCHOOL )<br>CORPORATION, )<br>)<br>Defendant. ) | Cause No. 3:80-CV-035-PPS |

**OPINION AND ORDER**

This case was filed more than forty years ago, and it concerns the desegregation of the South Bend community schools. The case has been reawakened by the proposed closing of Clay High School and the plan for dispersing the displaced students to the remaining high schools in South Bend. The matter is presently before me on the Motion to Intervene filed by Petitioners Jeanette McCullough, Mark Costello, Stacy Gates, and Save Clay, Inc. [DE 203.] On September 26, I held an oral argument on the fully briefed motion. [DE 217; DE 206; DE 207; DE 210; DE 215. *See generally* DE 218 (2/8/1980 Consent Decree); DE 219 (4/17/1981 Consent Decree).] For the reasons explained below, Petitioners fail to meet their burden to intervene in this case, and therefore the motion will be denied.

**Background**

In February 1980, the government filed a civil enforcement action against South Bend Community School Corporation ("SBCSC"), its superintendent, and its members and trustees, alleging the district discriminated against black pupils in violation of Title

IV of the Civil Rights Act of 1964, the Equal Educational Opportunities Act of 1974, and the Equal Protection Clause of the Fourteenth Amendment. The case was resolved through a consent decree, which was approved and adopted as an order of the Court. [DE 218.]

The 1980 consent decree requires SBCSC to develop and implement a specific desegregation plan for student assignment, and requires that the plan must provide that the percentage of black students in each school in the district be within fifteen percentage points of the total percentage of black students in the school corporation. The decree contemplates that in the succeeding years, schools may close. And in that regard, it requires that any school closings fall equitably on all racial groups. *Id.* at 3. In 1981, the court formally approved and adopted SBCSC's desegregation plan. [DE 219.]

For nearly 43 years, SBCSC has regularly reported information to the government to demonstrate its ongoing compliance with the terms of the consent decree, and the government has kept watch over SBCSC's efforts to eradicate discrimination against black pupils in the district. On several occasions, SBCSC has sought Court approval to close schools and make changes to its student assignment plan in light of new developments – including in 2005, 2015, and 2018. [DE 89; DE 150; DE 166.] The government states that in conjunction with each of these requests for Court approval, it obtained and reviewed community feedback and information from SBCSC regarding the proposed closures and changes to the student assignment plan to identify and address desegregation-related concerns prior to seeking formal Court approval of the proposals.

In keeping with this practice, the government states it is "currently evaluating SBCSC's proposed new student assignment plan," including the proposal to close Clay High School. [DE 206 at 2.]

In April 2023, SBCSC's Board passed a resolution concerning its Long-Range Facilities Master Plan. [DE 207-1.] The Plan includes the closure of Clay High School. It envisions that the fine arts program currently housed at Clay will be moved to another high school in the district, and Clay would undergo "emergency repairs" that may cost upwards of $3.4 million. However, the Board's resolution acknowledged that the government has only reviewed "proof-of-concept" boundaries for student reassignment, and that the district must still submit final proposed attendance boundaries in conjunction with Clay's planned closure. Moreover, the parties acknowledge that the actual implementation of the Plan, intended to commence in 2024, is contingent on Court approval.

On June 30, Petitioners filed their motion to intervene. [DE 203.] Petitioners are two sitting members of SBCSC's Board (Costello and McCullough), the parent of a district student (Gates), and an Indiana nonprofit corporation with a stated mission to prevent the closure of Clay High School (Save Clay, Inc.). *Id.* at 1–2. Both Costello and McCullough voted against the adoption of the Plan and associated closure of Clay High School on April 17. *Id.* at 2. Evidently, they did not prevail at the Board level, and they now seek to press their case as permissive intervenors in this litigation. Gates' daughter, M.F., is entering her junior year at Clay and anticipates its closing will have a negative

3

impact on her educational, social, and athletic opportunities going forward. *Id.* at 3. Save Clay, Inc. seeks to promote the interests of "any students displaced as a result of the proposed closure of Clay High School by SBCSC." *Id.* at 2.

The gist of Petitioners' motion is that SBCSC, acting through its duly elected Board, has "disregarded the Consent Decree's requirements with respect to the impact of the closing of Clay High School as it relates to the 40 percent minority population currently attending Clay High School." [DE 203 at 2.] More specifically, they tell me SBCSC is likely to violate the terms of its consent decree because its Board failed to offer a comprehensive plan for student reassignments starting in the 2024–2025 academic year prior to voting to approve the closure of Clay as a component of its Long-Range Facilities Master Plan. *Id.* In other words, they tell me that without a clear transition plan presently in place, the proposed closure of Clay High School "will likely violate the existing terms of the Consent Decree." *Id.* This argument struck me as odd, since SBCSC has not yet released its plan on how the students will be dispersed. At the very least, the argument seems premature.

In that regard, in order to avoid any last minute decisions by the Board, at the hearing, I ordered the parties to file a joint submission addressing a proposed schedule for the timely submission of SBCSC's Long-Range Facilities Master Plan for Court approval. [DE 217.] The parties stipulated to a series of specific measures that must be taken between October 16 and the proposed deadline for submission of the Plan for Court approval on December 20. [DE 220.] After reviewing the joint proposal, I

4

concluded that the schedule provided an appropriate timetable for submission and final approval of the Plan and adopted the parties' proposed schedule. [DE 221.]

Importantly, submitting the Plan to the Court by December 20 should ensure that any pupils affected by the potential closure of Clay High School do not have the decision unfairly sprung on them last minute – one of the chief concerns raised by Petitioners at the motion hearing. As it stands, any affected students should have a semester of lead time to adjust, to the extent the Plan and associated school closure are formally approved under the consent decree.

With this factual background in mind, let's turn to the substance of the motion.

## Discussion

Rule 24 of the Federal Rules of Civil Procedure provides for intervention by permission of the Court and intervention as of right. Fed. R. Civ. P. 24. Initially, a party can request permission to intervene under Rule 24(b)(1). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). That said, "[t]he decision to permit intervention is 'wholly discretionary.'" *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019) (quoting Fed. R. Civ. P. 24(b)(3); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)). While I must consider "whether the intervention will unduly delay or prejudice the adjudication of

the original parties' rights," Rule 24(b) "does not cabin [my] discretion" to grant permissive intervention. *Id.* (quoting Fed. R. Civ. P. 24(b)(3)).

The circuit has articulated a few factors guiding my analysis of permissive intervention under Rule 24(b): "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Babbitt*, 214 F.3d at 949. "The test for timeliness is essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994)).

In addition, one may seek to intervene as of right under Rule 24(a)(2). "To intervene in a federal lawsuit under Federal Rule of Civil Procedure 24(a)(2), a proposed intervenor needs to meet four elements: '(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action.'" *Kaul*, 942 F.3d at 797 (quoting *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019)). The intervenor must establish "all four elements; the lack of even one requires that the court deny the motion." *Id.* (citing *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001)).

The Seventh Circuit has noted that Rule 24(b)(1) is "vague about the factors relevant to permissive intervention," and has thus cautioned courts to avoid equating the two and denying "permissive intervention solely because a proposed intervenor failed to prove an element of intervention as of right." *Id.* at 804 (citing *City of Chicago v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996)). That said, the circuit has never "gone so far as [to] confin[e] the district court's discretion to only the two mandatory factors in Rule 24(b)(3) or to prohibit consideration of the elements of intervention as of right as discretionary factors" for purposes of ruling on a request for permissive intervention. *Id.* In other words, I can apply and assign appropriate weight to the factors relevant to intervention as of right as discretionary factors relevant to ruling on Petitioners' request for permissive intervention. *Accord Brookins v. S. Bend Cmty. Sch. Corp.*, 95 F.R.D. 407, 410 (N.D. Ind. 1982) ("The test for permissive intervention . . . involves an even stricter application of the standards for intervention as of right."), *aff'd sub nom. United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394 (7th Cir. 1983).

The most important factor, for present purposes, concerns the adequacy of representation. The Seventh Circuit has recognized "[t]he default rule is a liberal one: 'The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Kaul*, 942 F.3d at 799 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007)). But, there is a "strong[]" presumption of adequacy "when the

7

representative party 'is a governmental body charged by law with protecting the interests of the proposed intervenors'; in such a situation the representative party is presumed to be an adequate representative 'unless there is a showing of gross negligence or bad faith.'" *Id.* (quoting *Ligas*, 478 F.3d at 774). *See also Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020) (where "the existing party is a governmental agency or official with a legal duty to represent the absentee's interest—a rebuttable presumption of adequate representation arises, and the prospective intervenor must carry a heightened burden to establish inadequacy of representation").

In this very case, the Seventh Circuit has twice reviewed and affirmed denials of motions to intervene brought by non-party members of the South Bend community that parallel the request pending before me. *United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394 (7th Cir. 1983) ("*South Bend II*"); *United States v. S. Bend Cmty. Sch. Corp.*, 692 F.2d 623 (7th Cir. 1982) ("*South Bend I*"). As noted by the circuit in *South Bend I*, Title IV of the Civil Rights Act of 1964 assigns responsibility for representing public school children's interests in desegregation to the United States. Accordingly, it is "especially appropriate" to apply the presumption that the government adequately represents the interests of intervenors seeking to ameliorate segregation in public education. 692 F.2d at 628. This logic has some force – by bringing a civil enforcement action to eradicate school segregation, the government is uniquely positioned as a representative of the interests of the "public at large" in desegregating public schools. *See, e.g., Graham v. Evangeline Par. Sch. Bd.*, 223 F.R.D. 407, 435 (W.D. La. 2004).

Petitioners claim to "share a common goal with the main action" brought by the government – namely, "to achieve integration of schools operated by SBCSC." [DE 203 at 7–8.] Their motion argues that Petitioners are inadequately represented by *the school corporation*, which has allegedly kept them in the dark about an array of the important details associated with Clay's proposed closure (*e.g.*, attendance boundaries, transportation burdens, magnet programs). *Id.* at 14. But that misses the point. The relevant question is whether there is an existing *party* to the action that adequately represents their stated interests in intervention. Here, there is really no dispute that the government is an adequate representative to pursue their stated interest in achieving compliance with the consent decree and integration of schools operated by SBCSC. After all, that's what the government has been diligently pursuing by collecting information and monitoring the district's integration plan for nearly 43 years.

Based on the similarity of their interests to the government's interests in this case, Petitioners have to demonstrate some adversity of interest, collusion, or nonfeasance on the part of the government and/or SBCSC. *See Ligas*, 478 F.3d at 774 ("[W]hen the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith."). But their motion comes nowhere close to suggesting that the government or SBCSC have engaged in gross negligence or bad faith. At worst, Petitioners suggest that the Board's initial decision to close Clay High School without a detailed student reassignment plan

creates a situation where "no one can be certain that the Consent Decree will be complied with if Clay High School were to close at the end of the 2023–2024 academic year." [DE 203 at 13.] As addressed at the motion hearing, those concerns are substantially mitigated by the imposition of a clear schedule for the parties to iron out all the details required to ensure consent decree compliance in light of the proposed closure of Clay High School and submit the Plan for Court approval by the end of December of this year. [DE 217; DE 220; DE 221.]

In sum, it may be that Petitioners do not like the potential closure of Clay High School for perfectly sensible reasons; but it does not follow that their interests are inadequately represented by the government in this case. *South Bend II*, 710 F.2d at 396 ("If a parent could intervene in a school desegregation suit as of right merely by stating his [or her] concern in constitutional terms, or by denouncing the decree rather than seeking to modify it incrementally, the requirement of adequacy of representation would be a dead letter, and school desegregation suits would become unmanageable."). And because their interests are adequately represented by the government in this case, Petitioners cannot demonstrate any real prejudice to those interests if they are not allowed to intervene.

Turning to the other factors relevant to permissive intervention, I will note the motion appears to have been filed within a reasonable time period. Petitioners state they first learned of the possibility of Clay's closure in March 2023 (and this possibility was confirmed by April 17), and filed their motion to intervene a little over two months later.

I will therefore assume it is timely, as required under Rule 24(b). However, it is plain as can be that granting intervention would entail prejudice to the existing parties, including in the form of delay and additional expenses that would have to be committed to litigating the case. *See Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 390 (7th Cir. 2019). It would substantially complicate the proceedings and prejudice the existing parties to include as intervenors in this case two individuals who currently sit on the district's Board (and who only assert an interest in intervention based on their *official roles* on that Board). Their inclusion as parties in the case would also make it harder for the government and SBCSC (*i.e.*, through the decisions of its duly elected Board) to negotiate and plan for the implementation of the Long-Range Facilities Master Plan – of which the closure of Clay High School is merely one piece of the puzzle.

At the same time, Petitioners will not be meaningfully prejudiced by denial of permissive intervention. They have provided no factual basis to conclude that the government has failed to monitor the district's compliance with the consent decree's provisions or intends to do so with respect to the ongoing process of reviewing and implementing the proposed plan to close Clay High School. Petitioners' suspicions that the government will fail to ensure the closure complies with the consent decree's terms are wholly speculative and unsupported by facts in their motion and reply.

Finally, as previously noted, there is now a concrete timetable in place, with specific steps and deadlines for the district and the government to complete, between now and December 20, 2023 (barring any complications and approved extensions), to

finalize and seek approval of a comprehensive transition plan for students affected by Clay's potential closure. And, as was discussed at the hearing, once that Plan is announced, the Court will allow anyone from the public—including the would-be intervenors—to comment on the Plan. But for now, for the reasons I have outlined, allowing intervention would be imprudent and I am exercising my discretion to deny it.

**ACCORDINGLY:**

In light of the relevant factors under Rule 24(b), Petitioners have failed to meet their burden to intervene in this case. Their Motion to Intervene [DE 203] is therefore **DENIED**.

**SO ORDERED.**

ENTERED: October 16, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT